United States District Court
Southern District of Texas
**ENTERED**
January 14, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| CHRISTIAN EDUARDO LIMON *et al.* § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:24-CV-113 |
| § | |
| CITY OF LAREDO *et al.* § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

On November 27, 2024, United States District Judge Marina Garcia Marmolejo ordered that Eduardo Jimenez ("Mr. Jimenez") show cause as to why his motion to appear *pro hac vice* should not be denied and why he should not be sanctioned. (Dkt. No. 37). The matter was referred to the Undersigned to conduct a hearing. (*Ibid.*). On December 2, 2024, Mr. Jimenez filed a Notice of Withdrawal as Counsel for Defendants. (Dkt. No. 39). On December 11, 2024, the Undersigned held the hearing. (Min. Ent. December 11, 2024). For the reasons below, the Undersigned **RECOMMENDS** that Mr. Jimenez's Motion to appear *pro hac vice*, (Dkt. No. 35), be **DENIED** and that no sanction be imposed. Additionally, the Undersigned **RECOMMENDS** that Mr. Jimenez's Notice of Withdrawal[1] be **DENIED** as moot. (Dkt. No. 39).

## I. BACKGROUND

Plaintiffs originally filed this suit in the 406th District Court in Webb County, Texas alleging that Defendants subjected them to unlawful arrest resulting in both

---

[1] An attorney may withdraw as representation in a case, but "only upon leave of the court and a showing of good cause and reasonable notice to the client." *In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989). Accordingly, the Undersigned construes Mr. Jimenez's Notice of Withdrawal as a motion to withdraw as attorney.

1

mental and bodily harm. (*See* Dkt. Nos. 1, 1-1). On August 2, 2024, Defendants removed the case to this Court. (Dkt. No. 1). Several months later, Mr. Jimenez filed a motion to appear *pro hac vice* on behalf of Defendants. (Dkt. No. 35 at 1). In that motion, Mr. Jimenez was required to indicate whether he had "been sanctioned by any bar association or court." (*Ibid*.). Mr. Jimenez represented that he had not previously been sanctioned. (*Ibid*.). However, upon further investigation, the District Court discovered that the above representation was false. As identified by the District Court in their order referring the hearing to the Undersigned, "the State Bar of Texas sanctioned Mr. Jimenez for professional misconduct." (Dkt. No. 37 at 1) (citing *In re Jimenez* Order, File Nos. 202201774, 202202434, at 1). The sanction—which was imposed on August 30, 2022—enforced a probated suspension that was set for "a period of six months," running from October 1, 2022, until March 31, 2023. (*In re Jimenez* Order, File Nos. 202201774, 202202434, at 2). Accordingly, the District Court ordered that a show cause hearing be held for Mr. Jimenez "to explain why [his misrepresentations] do not justify denial of his motion and why he should not be sanctioned for his lack of candor to the tribunal." (Dkt. No. 37 at 2).

At the show cause hearing held on December 11, 2024, the Undersigned inquired into the misrepresentation. (Hrg. at 10:16:46–10:16:58). Mr. Jimenez stated he accepted full responsibility for the misrepresentation.[2] (Hrg. at 10:19:30–10:29:39). Mr. Jimenez explained that his firm delegated the duty of drafting and submitting the motion to appear *pro hac vice* to a legal assistant at the request of his

---

[2] Mr. Jimenez was accompanied by an attorney for purposes of the show cause hearing. (Hrg. at 10:19:30–10:29:39).

2

employer, Defendants' counsel. (Hrg. 10:17:37–10:17:15). Mr. Jimenez stated that he was provided a copy of the drafted motion, but failed to review its contents prior to its submission. (Hrg. at 10:18:30–10:20:25). Mr. Jimenez explained that as a result, the motion to appear *pro hac vice* contained the underlying misrepresentation. (Hrg. at 10:17:37–10:17:55).

Mr. Jimenez recognized his lack of due diligence resulted in the misrepresentation, but also explained why he did not conduct a review. (Hrg. at 10:21:10-10:24:03). Mr. Jimenez averred that he had previously drafted, intended to submit, and had been under the impression that a form to be permanently admitted into the Southern District of Texas had been submitted on his behalf containing information about his previous sanction. (Hrg. at 10:21:10–10:24:03). Mr. Jimenez explained that because of this, he had assumed that the legal assistant included the information about his prior sanction in the drafted motion to appear *pro hac vice*. (Hrg. at 10:21:55–10:22:45). Accordingly, Mr. Jimenez concluded that he did not intend to hide the sanction or deceive the court, but instead had assumed that the sanction had been disclosed, and only learned that it wasn't when he was ordered to show cause. (Hrg. at 10:22:45–10:24:00).

The Undersigned also inquired into Mr. Jimenez's failed to withdraw the motion to appear *pro hac vice* (instead, filing a Notice of Withdrawal) after he was notified that it contained the underlying misrepresentation. (Hrg. at 10:24:25–10:24:41). Mr. Jimenez explained that he did not have access to the CM/ECF system and that he was not made aware of the underlying misrepresentation until after his

3

employer had notified him of the Court's order. (Hrg. at 10:24:48–10:25:35). Mr. Jimenez averred that after his employer notified him of the Court's show cause order, he was directed by his employer to file the Notice of Withdrawal. (Hrg. at 10:24:48–10:25:35). Mr. Jimenez further explained that he had never been admitted to a Federal Court and was under the impression that other than the Notice of Withdrawal, there was nothing that could be done to remedy the misrepresentation. (Hrg. at 10:24:48–10:25:35). Finally, Mr. Jimenez explained he was fired by his previous employer after he filed the Notice of Withdrawal and no longer had any connection to the case other than through the show cause order. (Hrg. at 10:25:20–10:29:39).

## II. LEGAL STANDARD

Federal courts have the "inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[3] *In re Goode*, 821 F.3d 553, 558–59 (5th Cir. 2016) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Included in this power is a court's ability to discipline an attorney for engaging in behavior that disrupts the court's goal of efficient and accurate case disposition. *In re: Deepwater Horizon*, 824 F.3d 571, 578 (5th Cir. 2016). While every court has the authority to discipline pursuant to their inherent power, this power is not unlimited. *See Elliot v. Tilton,* 64 F.3d 213, 217 (5th Cir. 1995).

---

[3] District Judge Garcia Marmolejo's show cause order required "Mr. Jimenez to explain why . . . he should not be sanctioned for his lack of candor to the tribunal" under the Texas Disciplinary Rules of Professional Conduct. (Dkt. No. 37). Accordingly, the undersigned only makes a recommendation as to whether Mr. Jimenez should be sanctioned pursuant to the court's inherent authority as opposed to making a recommendation on whether Federal Rule of Civil Procedure 11 has been violated. *See In re Gillig*, 807 F.Supp. 2d 604, 619 n.4 (N.D. Tex. Aug. 29, 2011).

Generally, a court will only be permitted to sanction an attorney pursuant to its inherent power when the court "make[s] a specific finding that the attorney acted in bad faith." *In re Goode*, 821 F.3d at 559; *see also Dawson v. United States*, 68 F.3d 886, 895 (5th Cir. 1995). "Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay." *Fuller v. CIG Financial, LLC*, No. 3:22-CV-1289-D, 2023 WL 8482889, at *6 (N.D. Tex. Dec. 7, 2023) (quoting *Houston v. Sw. Airlines*, No. 3-17-CV-2610-N-BT, 2020 WL 774408, at *1 (N.D. Tex. Feb. 18, 2020)). Accordingly, an attorney is generally only sanctioned pursuant to the court's inherent power when the court makes a finding that the sanctionable conduct was committed in bad faith. However, a bad faith finding is not required where a court imposes a sanction based on both its inherent authority and for violation of a local rule. *In re Goode*, 821 F.3d at 559 (concluding the lower court was not required to make a finding of bad faith when sanctioning an attorney for a violation of the local rules).

## III. ANALYSIS

### A. Mr. Jimenez Violated the Southern District of Texas Local Rules when he Falsely Represented his Disciplinary Status.

To ensure that lawyers who practice before the court act as responsible professionals, the Southern District of Texas has adopted the Texas Disciplinary Rules of Professional Conduct as "the minimum standard" for attorney conduct. S.D. Tex. L.R., app., A, r. 1 ("Violation of the Texas Disciplinary Rules of Professional Conduct will be grounds for disciplinary action . . . ."). Under the Texas Disciplinary

Rules of Professional Conduct, lawyers owe a duty of candor to the Court. Specifically, "a lawyer shall not knowingly: (1) make a false statement of material fact . . . to a tribunal." Tex. Disciplinary Rules Prof'l Conduct R. 3.03(a)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A. Should a lawyer unknowingly make a false statement but later come to recognize its falsity, "the lawyer shall take reasonable remedial measures," including disclosing that the statement is false and additionally providing the "true facts." Tex. Disciplinary Rules Prof'l Conduct R. 3.03(b). Under the Texas Disciplinary Rules of Professional Conduct, "Knowingly" is defined as having "actual knowledge of the fact in question" which can be "inferred from the circumstances." Tex. Disciplinary Rules Prof'l Conduct terminology, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

Here, Mr. Jimenez states that the motion was submitted by his legal assistant on his behalf without his review. (Hrg. at 10:21:10-10:24:03). Mr. Jimenez further explains that he would not have allowed its submission had he known the motion contained the underlying misrepresentation. (Hrg. at 10:21:10-10:24:03). While this by itself may not establish that he "knowingly" submitted false information, Mr. Jimenez failed to take reasonable remedial measures to correct the false representation after the Court ordered him to show cause in violation of Texas Disciplinary Rule of Professional Conduct 3.03(b). As stated above, Mr. Jimenez's only action following the District Court's show cause order was the Notice of Withdrawal. (Dkt. No. 39). This was not a reasonable measure because it neither corrected the false representation made to the court nor actually withdrew the motion

to appear *pro hac vice.* While Mr. Jimenez explained that it was difficult to correct the false representation without access to CM/ECF, other avenues were available to Mr. Jimenez to rectify the error (including submitting a physical advisory notifying the Court of his error). Accordingly, Mr. Jimenez violated the Texas Disciplinary Rules of Professional Conduct and this Court's local rules when he made a false representation and failed to take reasonable remedial measures to correct it after being notified of its existence. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.03(b).

## B. Mr. Jimenez Should not be Sanctioned Pursuant to the District Court's Inherent Authority nor Pursuant to the Southern District Local Rules

"Because of the potency of inherent powers" courts must exercise "great restraint and caution" when considering whether to sanction an attorney pursuant to their inherent authority. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 454, 467 (5th Cir. 1996); *see also Chambers*, 501 at 44 ("inherent powers must be exercised with restraint and discretion"). Accordingly, a court's use of its inherent authority to sanction an attorney for misconduct is only permitted if it makes a finding that the attorney engaged in the underlying misconduct in bad faith. *Elliot,* 64 F.3d at 217.

It is evident from Mr. Jimenez's statements at the hearing that he was not acting in bad faith in making the misrepresentation to the Court, but instead failed to adequately review the document prior to its submission. While failing to review documents submitted on one's behalf does not meet the standards of professional conduct expected by this Court, it also does not demonstrate that Mr. Jimenez

7

intended to deceive the Court in bad faith. Accordingly, the Undersigned concludes that Mr. Jimenez should not be sanctioned pursuant to the Court's inherent authority.

Further, while a finding that Mr. Jimenez acted in bad faith is not required due to his violation of the local rules, courts in Texas will generally only sanction an attorney for violation of rule 3.03 when the false representation was intentionally made to deceive the court. *Twist v. McAllen Nat. Bank*, 248 S.W.3d 351, 367 (Tex. App.— Corpus Christi-Edinburgh Dec. 5, 2007 [mand. denied]) (mem. op.) (concluding a false representation that was made due to negligence would be "overlooked"); *see also In the Interest of A.M.B.V,* No. 13-13-00081-CV, 2015 WL 127891, at *12 (Tex. App—Corpus Christi-Edinburg Jan. 15, 2015, no. pet.) (mem. op.) (concluding no sanction should be imposed for violation of Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct when the attorney did not make the misrepresentation in bad faith). Mr. Jimenez failed to take reasonable remedial measures after he was notified of the false representation. However, his failure was the result of a lack of due diligence and experience. Accordingly, the Undersigned concludes that Mr. Jimenez should not be sanctioned for violation of the Southern District of Texas Local Rules.

Instead, the Undersigned recommends that this ordeal be considered a lesson to Mr. Jimenez that he must review all documents submitted on his behalf in the future. Exercising due diligence when submitting filings to the Court is essential to preserving both the Court's resources and professional integrity.

### C. Pro Hac Vice Motion

In the Fifth Circuit, "[c]ourts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006). If a District Court believes that an attorney has engaged in behavior that "justifies denying an attorney admission pro hac vice, it must set a hearing date and give the attorney adequate notice of all incidents of alleged . . . unethical behavior that will be charged against him." *In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975). Generally, an attorney in good standing of a state bar who is applying to appear *pro hac vice* will only be denied the privilege of appearing pro hac vice "on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer admitted generally to the bar of the court." (*Id*. at 1007).

Following the District Court's order to conduct a hearing on the issue, Mr. Jimenez filed a Notice of Withdrawal as Counsel for Defendants. (Dkt. No. 39). Defendants counsel then filed an advisory explaining that they "desire to withdraw the Motion filed for Mr. Jimenez for Admission Pro Hac Vice." (Dkt. No. 42 at 1). While neither filing is a motion to withdraw Mr. Jimenez's motion to appear *pro hac vice*, both Mr. Jimenez and Defendants' current counsel demonstrate that Mr. Jimenez does not intend to appear in the case beyond this issue. Accordingly, the Undersigned **RECOMMENDS** that Mr. Jimenez's motion to appear *pro hac vice,* (Dkt. No. 35), be **DENIED**.

## IV. RECOMMENDATION

The Undersigned **RECOMMENDS** the District Court find Mr. Jimenez not be sanctioned for his misrepresentation set forth in his motion to appear *pro hac vice* set pursuant to the local rules or the Court's inherent authority. The Undersigned further **RECOMMENDS** that the District Court **DENY** Mr. Jimenez's motion to appear *pro hac vice*, (Dkt. No. 35), and **DENY as moot** Mr. Jimenez's Notice of Withdrawal. (Dkt. No. 39).

## NOTICE TO PARTIES

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v.*

*United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**SIGNED** on this 14th day of January, 2025.

                                                              Christopher dos Santos
                                                              United States Magistrate Judge