United States District Court
Southern District of Texas
**ENTERED**
August 04, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| CHRISTIAN EDUARDO LIMON *et al.* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:24-cv-113 |
| | § | |
| CITY OF LAREDO *et al.* | § | |

# ORDER

Plaintiffs Christian and Erik Limon bring this civil rights action under 42 U.S.C. § 1983 against four City of Laredo police officers and the City itself, alleging constitutional violations arising from a May 21, 2022, encounter outside Plaintiffs' home (Dkt. No. 50). Defendants move to dismiss Plaintiffs' Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 52). Plaintiffs responded to the motion to dismiss,[1] and Defendants timely replied (Dkt. Nos. 54-1; 55). Having considered the parties' briefing and arguments presented at the May 20, 2025, hearing, the applicable law, and the body-worn camera footage incorporated into the complaint, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion (Dkt. No. 52).

---

[1] After Plaintiffs failed to respond by the Court's expedited scheduling deadline, the Court issued an order to show cause (Dkt. No. 53). In response, Plaintiffs attributed their failure to comply with the deadline to "an inadvertent calendaring error" which omitted the expedited deadline (Dkt. No. 54 at 1, 3). Plaintiffs filed the response one day after the Court's order to show cause and three calendar days after the Court's original deadline (*see* Dkt. Nos. 47 at 2; 54 at 3). Finding excusable neglect, the Court will consider Plaintiffs' response. Fed. R. Civ. P. 6(b)(1)(B).

# I.    BACKGROUND[2]

On May 21, 2022, around 6:09 a.m., Plaintiff Christian Limon called 911 "to report a suspicious neighbor exhibiting threatening behavior" (Dkt. No. 50 at 3). Christian informed the dispatcher that he was a lawful gun owner and that a legally possessed firearm was present in his home (Dkt. No. 50 at 3). He "requested immediate assistance for himself and his brother Erik due to safety concerns" (Dkt. No. 50 at 3). Approximately thirty-seven minutes later, Laredo Police Department ("LPD") Officers Christopher Martinez, James Cantu, Destiny Garay, and Jesus Lugo, Jr., arrived at the scene (Dkt. No. 50 at 2–4).

Officer Cantu's body-worn camera ("BWC") was activated at 6:52:11 a.m. (Dkt. No. 50 at 3; BWC at 6:52:11). Plaintiffs allege that although the officers' reports

---

[2] The Court recounts only those portions of the encounter most relevant to the legal claims and defenses at issue. The full incident, as reflected in the body-worn camera footage, unfolded over an extended period of time.

Further, in considering Defendants' Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and views them in Plaintiffs' favor. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581–82 (5th Cir. 2020) (citation omitted). The Court may also consider the complaint's "proper attachments," and documents incorporated into the complaint by reference. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (first citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); and then citing *Tellabs*, 551 U.S. 308).

Here, Plaintiffs' operative complaint has several attachments, and incorporates materials central to Plaintiffs' claims, including body-worn camera footage and arrest reports (Dkt. Nos. 50 at 3; 50-1). The Court considers the body-worn camera footage and arrest reports at this stage because they are referenced throughout the complaint and both sides rely on them in their arguments (*see, e.g.*, Dkt. Nos. 50 at 3, 5, 7, 10; 52 at 13 n. 50–51, 15 n. 61, 16 n. 67–71). *See Terrell v. Town of Woodworth*, No. 23-30510, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (citing *Dorsey*, 540 F.3d at 338) (holding that district court properly considered video footage at the motion to dismiss stage where the plaintiff repeatedly cited it and it formed the basis of his claims). The Court will credit Plaintiffs' factual allegations unless they are "blatantly contradicted" by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

suggested possible intoxication, the video shows Plaintiffs were coherent and responsive (Dkt. No. 50 at 4).

After Plaintiffs expressed frustration with the delayed response time, Officers Cantu and Martinez allegedly reacted with "hostility and aggression" (Dkt. No. 50 at 4 (citing BWC at 6:58:57–7:02:25), 12). After Erik Limon identified himself as a corrections officer, Officer Cantu told him, "around the street you are nobody" (Dkt. No. 50 at 4 (citing BWC at 6:54:02, 7:01:02–7:01:05); BWC at 6:59:09 (Erik: "I work for a prison, man.")). Officer Martinez said, "we don't give a fuck who the fuck you are. You're not the agent of the fucking state bro . . . or the fucking government" (Dkt. No. 50 at 4–5; BWC at 7:01:38–7:01:43). Christian patted Erik on the back and told him to "just let it go" (BWC at 7:01:53–7:01:57).

When Erik proceeded to question the officers' ranks, Officer Martinez drew up close to him and insulted him with vulgar Spanish slang (BWC at 7:02:17–7:02:24). At that moment, Christian approached Officer Martinez with a smile and lightly touched his chest with the back of his hand, seemingly in an effort to deescalate (BWC at 7:02:22–7:02:25). Officer Martinez immediately shoved Christian to the ground while yelling, "don't fucking touch me!" (Dkt. No. 50 at 5; BWC at 7:02:25–7:02:30).

Plaintiffs assert Erik "reacted verbally" and officers tackled him (Dkt. No. 50 at 5; BWC at 7:02:22–7:02:50).[3] Plaintiffs allege Officer Cantu applied an arm-lock

---

[3] Erik appears to say "hey, hey, hey," when he notices that Officer Martinez pushed Christian to the ground (BWC at 7:02:26–7:02:28).

3

while Erik, allegedly non-resistant with open hands, was taken to the ground and kneed in the neck and legs by Officer Garay (Dkt. No. 50 at 5).[4] After the officers handcuffed Erik and hoisted him from the ground, Officer Cantu noted that his body-worn camera was recording, saying "I'm hot. I've been hot all the time" (Dkt. No. 50 at 5–6; BWC at 7:02:46–7:03:06).

Officers detained both brothers in a patrol vehicle and searched their wallets, finding no contraband (Dkt. No. 50 at 6; BWC at 7:04:27–7:05:14). The officers then stepped away from the vehicle and conferred about the incident (BWC at 7:05:18–7:05:36). Officer Martinez remarked that "there will be a complaint," and Officer Cantu again stated that he had "been hot the whole time"—likely referring again to his body-worn camera being activated—and asked, "what can we do with this?" (BWC at 7:06:22–7:06:34). Officer Cantu then asserted, falsely, that Christian had pushed Officer Martinez (BWC at 7:06:54). Officer Cantu suggested, "I mean, supplement,"[5] to which Officer Martinez responded, "you're hot, right?" (BWC at 7:06:57–7:07:01). Officer Cantu confirmed that he was (BWC at 7:07:01). The officers then appeared to reach consensus on a narrative that Christian had pushed Officer Martinez, and Officer Cantu concluded, "we'll take it man, just a supplemental, man" (BWC 7:07:10–7:07:26). Plaintiffs allege this discussion "constitutes powerful objective evidence of pretext, or 'charge shopping'" (Dkt. No. 54-1 at 9).

---

[4] Although the video makes clear that Officer Garay kneeled on Erik, because of the angle of the body-worn camera, it is unclear what portion of Erik's body her knee lay upon (BWC at 7:02:38–7:02:59).

[5] During the hearing, defense counsel stated that this referred to a forthcoming supplement to the initial report about Plaintiffs' suspicious neighbor (Hr'g at 11:55:02–11:55:48).

Officers later removed Erik from the vehicle and searched him a second time (Dkt. No. 50 at 6; BWC at 7:08:08–7:09:26). During this search, Officer Cantu muted his body-worn camera (Dkt. No. 50 at 6; BWC at 7:09:00). Officers Cantu and Lugo then forced Erik back into the patrol car (Dkt. No. 50 at 6; BWC at 7:09:26).

Officers transported both Plaintiffs to the Webb County Jail (Dkt. No. 50 at 6). At booking—off-camera and "significantly later"—a contraband "powdery substance" was allegedly found on Christian Limon, which Plaintiffs allege was planted, given that no contraband was discovered in the on-scene searches (Dkt. No. 50 at 7, 10–11). Christian was charged with assault on a peace officer, resisting arrest, and possession of a prohibited substance (Dkt. No. 50-1 at 2). Erik was charged with resisting arrest and interference with public duties (Dkt. No. 50-1 at 3). The Webb County District Attorney later dropped all charges (Dkt. Nos. 50 at 10; 50-1 at 26–27).

In the operative complaint, Plaintiffs bring several 42 U.S.C. § 1983 claims based on this incident against the responding officers and the City of Laredo: (1) Fourth Amendment violations including false arrest, excessive force, and fabrication of evidence; (2) Fourteenth Amendment due process violations; (3) First Amendment retaliation; (4) municipal liability; and (5) failure by the other officers to intervene in Officer Martinez's alleged use of excessive force (Dkt. No. 50 at 9–16).

On May 28, 2025, Defendants filed a motion to dismiss Plaintiffs' Fourth Amended Complaint, invoking qualified immunity on behalf of the individual officers (Dkt. No. 52 at 9). Plaintiffs filed a response on June 7, 2025, and Defendants replied

on June 17, 2025, timely under the Court's scheduling order (Dkt. Nos. 53, 54-1, 55). Therefore, the matter is ripe for the Court's decision.

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While courts must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Sewell*, 974 F.3d at 582 (citation omitted).

When evaluating a Rule 12(b)(6) motion, courts may consider not only the allegations in the complaint, but also its "proper attachments," and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338 (first citing *Blackwell*, 440 F.3d at 286; and then citing *Tellabs*, 551 U.S. 308). In cases where video footage is incorporated into the complaint and central to the plaintiff's claim, the court may consider the video at the motion to dismiss stage. *Terrell*, 2024 WL 667690, at *5 (citing *Dorsey*, 540 F.3d at 338). Courts credit the complaint's factual allegations unless they are "blatantly contradicted" by the video evidence. *Scott*, 550 U.S. at 380–81.

6

Qualified immunity shields government officials from § 1983 liability unless their conduct violates a constitutional right that was clearly established at the time of the alleged misconduct. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Courts apply a two-step analysis to determine whether qualified immunity applies: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was clearly established such that a reasonable official would have known the conduct was unlawful. *Mace*, 333 F.3d at 623–24 (citation omitted). Courts may address these prongs in any order. *Pearson*, 555 U.S. at 236.

## III.    DISCUSSION

### A. Fourth Amendment

Plaintiffs bring Fourth Amendment claims based on false arrest, excessive force, and fabrication of evidence (Dkt. No. 50 at 9–11). Because the claims arise from distinct interactions with law enforcement and involve separate legal theories, the Court addresses the Fourth Amendment allegations as to each plaintiff in turn.

### 1. *Christian Limon: False Arrest*

Christian Limon alleges that he was arrested without probable cause in violation of the Fourth Amendment (Dkt. No. 50 at 10). A false arrest claim requires a showing that the plaintiff was arrested without probable cause. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citation omitted). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge

that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Of course, probable cause must be present at time of the arrest. *See, e.g.*, *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The body-worn camera footage shows that after a tense verbal exchange between Erik Limon and the officers, Christian Limon approached Officer Martinez and made brief physical contact by placing the back of his hand against Officer Martinez's chest (BWC at 7:02:25). Officer Martinez immediately reacted by pushing Christian to the ground while saying, "don't fucking touch me!" (BWC at 7:02:25–7:02:26). Defendants assert that Christian committed an assault under Texas law, which in relevant part prohibits "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code Ann. § 22.01(a)(3). At the hearing, Plaintiffs countered that the encounter was casual until that point, asserting that the officers escalated the situation and used that escalation as manufactured probable cause to arrest Christian (Hr'g at 11:22:08–11:22:42).

Although the video reflects that the contact was brief and non-aggressive, a reasonable officer could nonetheless have perceived the gesture as provocative, given the charged atmosphere and escalating tension. Courts evaluating qualified

8

immunity must avoid applying "the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted); *see also Marlbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (citing *Graham*, 490 U.S. at 396). On these facts, Officer Martinez had at least arguable probable cause to believe Christian violated § 22.01(a)(3), which precludes a false arrest claim. *See Dupre v. St. Tammany Par. Sheriff's Off.*, No. CIV. A. 93-2886, 1993 WL 483584, at *3 (E.D. La. Nov. 17, 1993) ("Since probable cause existed for [the officer] to arrest [the plaintiff] for battery, [the plaintiff's] claim that his constitutional right against false arrest was violated has no basis as a matter of law and, accordingly, the claim is dismissed."); *cf. Nieves v. Bartlett*, 587 U.S. 391, 408 (2019) (citation omitted) (probable cause for disorderly conduct arrest where a reasonable officer could have concluded the intoxicated plaintiff attempted to challenge state trooper by standing close to the trooper and speaking loudly, prompting trooper to push him back); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."). Accordingly, Defendants are entitled to qualified immunity on Christian Limon's false arrest claim.

### 2. *Christian Limon: Excessive Force*

Christian Limon next alleges that the officers used excessive force in effecting his arrest, in violation of the Fourth Amendment (Dkt. No. 50 at 10). Although Christian's false arrest and excessive force claims arise from the same incident, they are "separate and distinct," and must be analyzed separately. *See Massey v. Wharton*,

477 F. App'x 256, 262 (5th Cir. 2012) (quoting *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)).

To overcome qualified immunity on his excessive force claim, Christian must show that Officer Martinez violated a constitutional right and that the right was clearly established. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (citation omitted). Christian identifies *Graham*, 490 U.S. 386, and *Barnes v. Felix*, 145 S. Ct. 1353 (2025) as clearly establishing the alleged constitutional violation (Dkt. No. 54-1 at 14). But neither case satisfies the standard.

*Barnes* was decided after the events at issue and cannot constitute clearly established law for purposes of qualified immunity. *See City of Tahlequah v. Bond*, 595 U.S. 9, 13 (2021) (citation omitted). And although *Graham* provides the general framework for assessing the reasonableness of force, it "do[es] not by [itself] create clearly established law outside 'an obvious case.'" *White v. Pauly*, 580 U.S. 73, 80 (2017) (citation omitted). Obvious cases are "rare," and "a body of relevant case law is usually necessary to clearly establish the answer." *District of Columbia. v. Wesby*, 583 U.S. 48, 64 (2018) (citation modified) (citations omitted); *see also Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (reversing appellate court's reliance on *Graham*'s general test). Plaintiffs do not argue that *Graham*'s "specific context" clearly establishes "the violative nature of the *particular* conduct" at issue here (*see* Dkt. No. 54-1 at 11–12 (analyzing the general applicability of the *Graham* factors)). *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted); *see also Ashcroft*, 563 U.S.

at 741. Nor do the facts otherwise rise to the "rare" level of an "obvious case." *Wesby*, 583 U.S. at 64 (citation omitted).

Even if Plaintiffs had made a more granular argument, *Graham* would not clearly establish a violation here. In *Graham*, the Supreme Court found excessive force where police violently restrained a diabetic man experiencing an insulin reaction during an investigatory stop and prevented him from receiving medical attention. 490 U.S. at 388–90. The contrast between the *Graham* facts and those here further demonstrates that the constitutional question was not "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Guerra*, 82 F.4th at 285 (citation omitted); *see also Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) ("Because the plaintiff must point to a case almost squarely on point, qualified immunity will protect 'all but the plainly incompetent or those who knowingly violate the law.'").

Because Christian has not identified clearly established law that would have given Officer Martinez fair notice that his conduct violated the Fourth Amendment, this claim must be dismissed. *See Sealey v. Mancias*, No. SA-24-CV-00399-XR, 2024 WL 4849078, at *5 (W.D. Tex. Nov. 15, 2024) (Rodriguez, J.) (citation omitted) (declining to reach the question of whether the officer's conduct violated the Fourth Amendment where the allegation did not point to a clearly established right).

### 3. *Christian Limon: Fabrication of Evidence and Charges*

Christian also asserts a claim based on the alleged fabrication of evidence and charges, contending that officers planted a powdery substance in his wallet and wrongfully charged him with possession of a controlled substance (Dkt. Nos. 50 at 7, 11; 50-1 at 2). Plaintiffs cite *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003), *overruling on other grounds recognized by Espinal v. City of Houston*, 96 F.4th 741 (5th Cir. 2024), to argue that the alleged conduct violated clearly established law.

That reliance is misplaced. In *Castellano*, a police officer and the plaintiff's employee secretly altered tape recordings to fabricate a confession, and the state used that evidence, along with perjured testimony, to obtain the plaintiff's wrongful conviction. *Id.* at 943, 955. The facts in this case—involving an alleged drug plant that did not result in prosecution—bear little resemblance to *Castellano* and, therefore, *Castellano* does not clearly establish a violation here.

Moreover, this claim is more appropriately analyzed as a Fourth Amendment malicious prosecution claim, not a due process claim, because it concerns pretrial conduct. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause."). However, the Fifth Circuit did not recognize malicious prosecution claims from 2003 until *Thompson* was decided, and even then, only began articulating the elements of such claims in February 2023. *See Armstrong*

*v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023); *Guerra*, 82 F.4th at 289; *Santander v. Salazar*, 133 F.4th 471, 483 (5th Cir. 2025) (citing *Armstrong*, 60 F.4th at 279).

Here, because the District Attorney rejected the charges for prosecution on October 5, 2022—after *Thompson* but before *Armstrong*—qualified immunity shields the officers from liability for malicious prosecution (Dkt. No. 50-1 at 26–27). *See McDonough v. Smith*, 588 U.S. 109, 116 (2019) (citations omitted) (malicious prosecution claim accrues "only once the underlying criminal proceedings have resolved in the plaintiff's favor"). As the Fifth Circuit held in *Santander*, officers cannot be expected to conform to legal standards that have not yet been articulated. *Santander*, 133 F.4th at 483. Accordingly, Christian's fabrication of evidence and malicious prosecution claims must be dismissed.

### 4. *Erik Limon: False Arrest*

Erik Limon alleges that officers unlawfully arrested him without probable cause in violation of the Fourth Amendment (Dkt. No. 50 at 10). Although he does not directly state which officers arrested him in the Fourth Amended Complaint, the video footage makes clear that Officers Cantu and Garay were responsible for arresting Erik (BWC at 7:02:25–7:03:15; Dkt. Nos. 50 at 10 (alleging "Officer Garay kneeled on Erik's neck and legs"); 50-1 at 10). Upon review of the body-worn camera footage, and construing any ambiguity in Plaintiffs' favor, Erik did not make physical contact with any officer prior to being arrested (BWC at 7:02:24–7:02:30). Nevertheless, Defendants argue that Erik interfered with Christian's arrest and posed a threat to the officers, citing the allegation that he "reacted verbally" when

13

officers arrested Christian (Dkt. No. 52 at 16). They also contend that Erik assumed "a bladed stance toward Officer Martinez," and "contact[ed] Officer Martinez as he move[d] to subdue and handcuff" Christian (Dkt. No. 52 at 13).

Defendants further suggest that Erik may have been armed, referencing a statement to police that one of the brothers had considered retrieving a firearm (Dkt. No. 52 at 16). But the Fourth Amended Complaint states that it was *Christian*, not Erik, who informed the 911 dispatcher about possessing a firearm *in his home* (Dkt. No. 50 at 3). Construing the facts in Erik's favor, there is no indication the officers had any reason to believe he was armed at the time of the encounter on the street outside the brothers' home.

Further, the video evidence does not support Defendants' characterization of Erik's conduct. When Officer Martinez took Christian to the ground, Erik briefly turned toward them (BWC at 7:02:24–7:02:30). Officer Martinez grabbed Erik's arm and Officer Cantu then immediately pushed him down (BWC at 7:02:26–7:02:30). Construing the facts in Erik's favor, he did not physically intervene, make contact with Officer Martinez, or adopt a combative "bladed stance," a characterization of Erik turning to view Officer Martinez take Christian down which hardly favors Erik.

To the extent Defendants rely on Texas Penal Code § 38.15, which prohibits interference with public duties, that statute expressly exempts conduct consisting of "speech only." § 38.15(d). Any verbal frustration Erik expressed prior to or during Christian's arrest cannot support an interference charge under § 38.15(d). *See Freeman v. Gore*, 483 F.3d 404, 415–16 (5th Cir. 2007) (denying qualified

14

immunity under § 38.15(d)'s speech bar where the arrestee had merely shouted at officers and refused to consent to a warrantless search).

Because there was no probable cause to arrest Erik, and because the right not to be arrested absent probable cause is clearly established, the Court concludes that Officers Cantu and Garay are not entitled to qualified immunity on this claim. *Larpenter v. Vera*, No. 22-30572, 2023 WL 5554679, at *5 (5th Cir. Aug. 29, 2023) (citations omitted) ("[B]oth the Supreme Court's and [the Fifth Circuit's] precedent are abundantly clear that forceful seizures must be supported by probable cause."); *see also Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017) (denying qualified immunity for arrest of passive plaintiff who questioned officer's authority because "[t]here can be no doubt that the right not to be arrested absent probable cause was clearly established"); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 191–92, 197, 203 (5th Cir. 2009) (holding that officers violated the Fourth Amendment during a raid by removing plaintiffs from a nightclub without probable cause); *Green v. Thomas*, 129 F.4th 877, 884 (5th Cir. 2025) ("[T]he requirement of probable cause prior to seizure is so foundational it is in the Fourth Amendment itself . . . . It is hard to imagine a right more clearly established.").

### 5. *Erik Limon: Excessive Force*

Erik Limon also alleges that the officers used excessive force during his arrest, in violation of the Fourth Amendment (Dkt. No. 50 at 10). But even though Erik's arrest may have lacked probable cause, the use of force during that arrest does not automatically give rise to an excessive force claim. *See Freeman*, 483 F.3d at 417

("That the deputies' arrest of [plaintiff] was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive."); *see also Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) ("[W]here police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.").

Plaintiffs allege that officers tackled Erik, kneeled on his neck and legs, slammed him against the patrol car, and shoved him into the unit (Dkt. No. 50 at 10). Plaintiffs contend that despite Erik's compliance, he continued to be "manhandled," amounting to excessive force under *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) (Dkt. No. 54-1 at 12; Hr'g at 12:19:15–12:19:28). However, the body-worn camera footage paints a less dramatic picture. The video shows that Erik complied with orders and submitted to handcuffing without resistance (BWC at 7:02:09–7:03:00). While some jostling occurred as officers placed Erik in the patrol car, it was "minor and incidental to the encounter." *See Drumgole v. Frumveller*, No. CIV.A. 14-2827, 2015 WL 2250134, at *9 (E.D. La. May 13, 2015). Nor does *Bush* help Plaintiffs' position, as the plaintiff there sustained significant injuries to her face, teeth, and jaw after being "forcefully slammed . . . into a vehicle when [she] was handcuffed and subdued." 513 F.3d at 501.

Given the circumstances captured on video, the degree of force Officer Cantu used was objectively reasonable. *See Freeman*, 483 F.3d at 416–17 (plaintiff failed to

state excessive force claim where she alleged police twisted her arms, "jerked her all over the carport," and bruised her wrists and arms with tight handcuffs, necessitating later medical treatment). Because Erik has not shown that the force used was excessive under clearly established law, Officer Cantu is entitled to qualified immunity on this claim.

### B. Fourteenth Amendment Due Process

Plaintiffs also assert a Fourteenth Amendment due process claim, alleging that Defendants planted contraband in Christian's wallet and pursued baseless charges as part of "arrest and detention procedures that were fundamentally unfair and punitive" (Dkt. No. 50 at 10–11). But such allegations fall squarely within the protections of the Fourth Amendment, not the Due Process Clause. *See Manuel v. City of Joliet*, 580 U.S. 357, 367–69 (2017) (claim for wrongful arrest and detention after seizure of suspected controlled substances arose under Fourth Amendment, not Due Process Clause); *see also Albright*, 510 U.S. at 274 (there is no Fourteenth Amendment substantive due process right to be free from criminal prosecution without probable cause; rather, claims regarding pretrial deprivations of liberty arise under the Fourth Amendment); *Jacobs v. Port Neches Police Dep't*, No. 1:94-CV-767, 1997 WL 470354, at *4 (E.D. Tex. June 16, 1997) (plaintiff stated Fourth Amendment malicious prosecution claim against officers who allegedly planted drugs in his car).

To the speculative extent Plaintiffs may assert a procedural due process claim, they do not identify any unfairness in Texas' legal procedures for depriving a person of liberty. As such, their allegations fall short of the mark. *See Reynolds v. City of*

*Poteet*, No. SA:12-CV-01112-DAE, 2013 WL 594731, at *6 (W.D. Tex. Feb. 15, 2013) (quoting *Daniels v. Williams*, 474 U.S. 327, 339 (1986)) (a procedural due process claim fails where the complaint "does not include a challenge to the fundamental fairness of the State's procedures").

Because Plaintiffs' allegations are more appropriately addressed under the Fourth Amendment, their Fourteenth Amendment due process claim must be dismissed.

### C. First Amendment Retaliation

Plaintiffs allege that the officers violated their First Amendment rights by arresting them in retaliation for protected speech (Dkt. No. 50 at 12). Specifically, they assert that the officers arrested them because they criticized the police response time and called for respectful treatment (Dkt. No. 50 at 12). Defendants argue that these claims fail as a matter of law because the officers had probable cause to arrest Plaintiffs (Dkt. No. 52 at 12).

"For a First Amendment retaliation claim, a plaintiff must demonstrate: (1) [they were] engaged in constitutionally protected activity; (2) the officer's action caused [them] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against [their] exercise of constitutionally protected activity." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021) (citation omitted). Where the adverse action is an arrest, the plaintiff must also plead and prove that the arrest lacked probable cause. *Nieves*, 587 U.S. at 402. As the Supreme Court

explained, if probable cause is absent for an arrest, that will "generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.*

As to Christian Limon, the Court has already determined that probable cause existed to arrest him for assault. Because Christian cannot show that the arrest was unsupported by probable cause, the Court finds that his First Amendment retaliation claim must be dismissed. *See Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024) (retaliatory arrest claim precluded where officers had probable cause for arrest).

As to Erik Limon, however, the Court previously found that Plaintiffs plausibly alleged a lack of probable cause for his arrest. That finding opens the door for Erik's retaliation claim to proceed, subject to the additional hurdle of qualified immunity. *See Rincon v. City of Laredo*, No. 24-40168, 2025 WL 603883, at *5–6 (5th Cir. Feb. 25, 2025). In their motion, Defendants rely exclusively on the presence of probable cause to defeat this claim and do not contend that they would be entitled to qualified immunity if probable cause was lacking (Dkt. No. 52 at 13).

Erik has plausibly alleged that he was engaged in protected speech when he criticized the officers for their delayed response and demanded respectful treatment. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "[C]riticism of public officials lies at the very core of speech protected by the First Amendment." *Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999). "[E]ven profanity-laden speech directed at police officers" is protected if it is not "shown likely

to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003); *Hill*, 482 U.S. at 461 (citation omitted); *see also Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir. 1992) (citation omitted) (arrest in response to plaintiff questioning a police raid stated First Amendment claim).

The second element is also satisfied. Arrest is an adverse action that would chill the speech of a person of ordinary firmness. *Brooks v. City of West Point*, 639 F. App'x 986, 989 (5th Cir. 2016). The third element—whether Erik's speech substantially motivated the officers' decision to arrest him—is supported by both the complaint and the body-worn camera footage. Erik identified himself as a correctional officer and expressed frustration about the officers' delayed response, stating "y'all never came" and "the situation literally passed like 30 minutes ago" (Dkt. No. 50 at 4; BWC at 6:59:14, 6:59:20). Plaintiffs allege that this criticism triggered a hostile and escalating response, especially after Erik said "no mames" ("no fucking way") to the officers (Dkt. No. 50 at 4; BWC at 7:00:49). Officer Cantu raised his voice, saying "no mames de qué? Habla bien. Respeta compadre,"[6] and stepped up close to Erik (BWC at 7:00:50–7:00:54). Soon after, he dismissed Erik with profanity, telling him "you're on the street, you're nobody," and "me vale verga"—"I don't give a shit" (Dkt. No. 50 at 4; BWC at 7:01:05, 7:01:12). Officer Martinez then stepped forward and vulgarly berated Erik, saying, "you're not the agent of the fucking state bro . . .

---

[6] Plaintiffs translate this as "speak correctly. Show respect, buddy" (Dkt. No. 50 at 4), although this seems to omit the "no mames de qué" portion of Officer Cantu's response, for which Google Translate proffers "don't fuck with what?"

or the fucking government" (Dkt. No. 50 at 4–5; BWC at 7:01:38–43). After Erik

questioned the officers' ranks, Officer Martinez advanced on him again and mocked

him in Spanish (BWC at 7:02:17–7:02:24). When Christian tried to defuse the

situation with a light touch to Officer Martinez's chest, Officer Martinez immediately

shoved him to the ground while yelling, "don't fucking touch me!" (Dkt. No. 50 at 5;

BWC at 7:02:25–7:02:30). Erik "reacted verbally" and Officers Cantu and Garay

subdued and arrested him (Dkt. No. 50 at 5; BWC at 7:02:22–7:02:50).

Taking these allegations as true and construing the facts in Erik's favor, the

complaint supports a reasonable inference that Erik's arrest was not motivated by

criminal conduct, but rather by the officers' offense at his tone and criticism. Given

the absence of probable cause, these facts satisfy the "but-for" causation requirement

for a First Amendment retaliation claim. *Zinter v. Salvaggio*, 610 F. Supp. 3d 919,

957 (W.D. Tex. 2022) (citing *Nieves*, 587 U.S. at 399).

Contrary to Plaintiffs' assertion, the officers' later discussion of possible

charges and the District Attorney's decision not to prosecute do not support an

alternative theory under the "extremely narrow" exception recognized in *Nieves* for

objectively unusual arrests (Dkt. No. 54-1 at 8–10). *See Nieves*, 587 U.S. at 407;

*Rahdar v. City of Friendswood*, No. 3:22-CV-00280, 2025 WL 918539, at *6 (S.D. Tex.

Mar. 14, 2025) (citing *Gonzalez v. Trevino*, 602 U.S. 653, 667 (2024) (Alito, J.,

concurring)) (Edison, J.), *report and recommendation adopted*, No. 3:22-CV-280, 2025

WL 1158552 (S.D. Tex. Apr. 21, 2025). This exception requires "objective evidence"

that similarly situated individuals who did not engage in protected speech are not

typically arrested. *Miller v. Salvaggio*, No. 23-50894, 2024 WL 5116799, at *7 (5th Cir. Dec. 16, 2024) (quoting *Nieves*, 587 U.S. at 407).

Plaintiffs offer no such evidence here. Their reliance on the officers' tone and post-arrest commentary fails because the exception turns not on subjective intent or pretext but on objective evidence of differential enforcement. *Nieves*, 587 U.S. at 407 (citation omitted) ("[T]he statements and motivations of the particular arresting officer are irrelevant" (citation modified)). Plaintiffs have not presented objective evidence that officers "have probable cause to make arrests for violations of Texas Penal Code Section [§ 38.15], but typically do not exercise their discretion to do so." *Miller*, 2024 WL 5116799, at *9. Plaintiffs' argument that the facts surrounding the arrest show pretext misses the point: the *Nieves* exception does not turn on a circumstantial demonstration of pretext, but rather on whether Plaintiffs presented "strong affirmative evidence" that officers typically decline to arrest similarly situated individuals. *Rahdar*, 2025 WL 918539, at *7 (quoting *Gonzalez*, 602 U.S. at 668 (Alito, J., concurring)); *see also Miller*, 2024 WL 5116799, at *9 (police chief's "statements and laughter during the midnight raid [and] his post-arrest statements . . . [did] not support the application of the post-*Gonzalez Nieves* exception because they [were] subjective"). They have not done so and thus cannot satisfy the exception.

Regardless, Erik's claim does not depend on the exception, but instead rests on a plausible inference of retaliatory arrest in the absence of probable cause, so it is not barred under *Nieves*. And because retaliatory arrest for protected speech violates clearly established law, qualified immunity does not apply. *See Ybarra v. Davis*,

489 F. Supp. 3d 624, 632 (W.D. Tex. 2020) (first citing *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008); then citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of protected speech activities."); and then citing *Hill*, 482 U.S. at 462)) ("Fifth Circuit precedent clearly establishes that it is a First Amendment violation if an officer retaliates against someone in response to protected speech.").

By contrast, Plaintiffs' bare allegation that they were arrested in retaliation for calling 911 lacks support (*see* Dkt. No. 50 at 12). They do not allege that the officers were aware of the call's contents or that the arrests were tied to the call in any meaningful way (Dkt. No. 50 at 12). Absent a plausible showing of causation, this aspect of the claim must be dismissed.

Accordingly, Defendants' motion to dismiss should be granted as to Christian Limon's First Amendment claim and as to both Plaintiffs' theory based on the 911 call. But Erik Limon has stated a plausible claim that his arrest was in retaliation for protected speech, and Defendants' motion will be denied as to that portion of the claim.

### D. Municipal Liability

Plaintiffs also bring a § 1983 municipal liability claim against the City of Laredo (Dkt. No. 50 at 12–15). *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978) (holding that "municipalities and other local government units" can be sued under § 1983). Plaintiffs claim that the City of Laredo's policies and

practices caused the alleged constitutional violations in this case (Dkt. No. 50 at 15). To state a *Monell* claim, Plaintiffs must plausibly allege: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citation omitted). The Fifth Circuit recognizes three ways to establish an official policy or custom: (1) "written policy statements, ordinances, or regulations"; (2) "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy"; or (3) in "rare circumstances," a final policymaker's "single decision" to "perform[ ] the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

To begin, Christian Limon's municipal liability claim fails because the Court has found that his arrest was supported by probable cause and did not violate the Constitution. "[W]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Windham v. Harris County*, 875 F.3d 229, 243 (5th Cir. 2017) (citation omitted).

As to Erik Limon, Plaintiffs assert that the City of Laredo has fostered "a culture of impunity" by "failing to adequately supervise, investigate, or discipline officers engaged in misconduct" (Dkt. No. 50 at 13–14). They allege that the City: (a) "produces biased internal reports exonerating officers;" (b) "fails to investigate credible evidence surfaced by civilian complaints or litigation;" (c) "ignores patterns

of repeated misconduct;" (d) "prematurely clears officers;" and (e) "refuses to take corrective action" (Dkt. No. 50 at 14). They also point to a policy of retaining internal investigation records for only thirty months, and cite figures showing that between 2016 and 2021, only four of sixty-two civilian complaints were sustained, and none of the nine excessive force complaints in 2021 were upheld (Dkt. No. 50 at 8, 13–14).

These allegations fail to satisfy the *Monell* test. First, Plaintiffs do not allege any unconstitutional written policy, ordinance, or regulation. Second, their allegations of a widespread practice or custom fall short because they did not identify similar incidents to the one at issue. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (citation modified) (citation omitted). The only quantitative evidence Plaintiffs offer is that 6% of civilian excessive force complaints were sustained from 2016 to 2021 (Dkt. No. 50 at 8). But the Court has dismissed Plaintiffs' excessive force claims, and Plaintiffs do not allege that any of these complaints involved false arrest, retaliatory arrest, or similar circumstances (*see* Dkt. No. 50 at 7–9, 12–15). "Notice of a pattern of *similar* violations is required." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (emphasis added). Without that showing, Plaintiffs' allegations amount to isolated incidents, which are insufficient to impose municipal liability. *See Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016).

Plaintiffs also assert a theory of municipal liability based on the City's alleged failure to investigate or track lawsuits alleging officer misconduct (Dkt. Nos. 50 at 8–9, 13–14; 54-1 at 17). They argue that litigation often surfaces more credible and comprehensive evidence than citizen complaints or internal investigations and cite academic commentary suggesting that best practices call for treating lawsuits as investigative triggers (Dkt. No. 50 at 13; 54-1 at 17). However, the alleged failure to adopt litigation-based oversight does not substitute for the required *Monell* showing. A plaintiff must demonstrate that a municipal policy was the "moving force" behind the constitutional violation at issue. *Pineda*, 291 F.3d at 328 (citation omitted). The complaint does not allege that the City ignored lawsuits involving similar facts, nor does it show how the City's litigation oversight practices caused the alleged constitutional violations in this case. *See Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (citations omitted) (moving force element, under the deliberate indifference framework, requires a showing of a "'causal link' between the policy and [the] harm," and the defendant's "complete disregard of 'the risk that a violation of a particular constitutional . . . right [would] follow the decision'"). At most, Plaintiffs challenge the City's internal monitoring protocols. But generalized policy critiques and references to academic opinion, absent factual allegations linking the challenged conduct to a pattern of similar constitutional violations, do not give rise to municipal liability. *Id.* (citation omitted) ("[B]ald factual assertions coupled with informational literature [are not] enough to support a deliberate indifference claim.").

Plaintiffs further allege that the City failed to adequately train and supervise its officers on matters including lawful arrests, use of force, and protection of constitutional rights (Dkt. No. 50 at 14). However, this claim falls well short of the "stringent standard of fault" required to show deliberate indifference. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). To state a viable failure-to-train or failure-to-supervise claim under § 1983, Plaintiffs must allege with specificity how the City's training or supervisory practices were deficient and demonstrate either a pattern of similar constitutional violations or that the alleged misconduct was the highly predictable result of a particular omission. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010); *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (citation omitted). But Plaintiffs do not describe the content of the City's training or supervision programs, identify any particular deficiency, or show that the City was on notice of a pattern of similar violations (*see* Dkt. No. 50 at 14).[7] Generalized assertions about subpar training or a "culture of impunity" are not enough to support municipal liability (Dkt. No. 50 at 14). *See Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015). Because Plaintiffs have failed to plausibly allege particular deficiencies in the City's training and supervision of officers, deliberate indifference, or a causal link

---

[7] Nor do Plaintiffs salvage their theory by pointing to the City's policy of retaining internal affairs files for only thirty months (Dkt. No. 50 at 13–14). Even if the Court assumes that an extended retention period might aid in supervising or training officers, Plaintiffs do not explain how the current policy itself reflects deliberate indifference or caused the alleged constitutional violations in this case. *See Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023) (citation omitted) (deliberate indifference "requires a complete disregard of the risk that a violation of a particular constitutional right would follow the decision"). Absent factual allegations showing that the file retention policy rendered future violations "highly predictable," Plaintiffs' challenge amounts to a policy critique, not a plausible claim of constitutional fault under § 1983. *See Connick*, 563 U.S. at 71.

between the City's policies and the violations they assert, this theory of liability must also be dismissed. *See Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024) (citation omitted) (affirming dismissal of failure-to-train claim where plaintiff had "merely styled his complaint about the specific injury suffered as a failure to train claim" (citation modified)), *cert. denied*, 145 S. Ct. 1313 (2025). However, while the officers' conduct does not support municipal liability under current law, the Court notes that the body-worn camera footage reflects unprofessional behavior, including the officers' escalating hostility, repeated profanities, and a confrontational tone, that could serve as a useful training example of how *not* to respond to emergency calls.

Lastly, Plaintiffs advance a single-incident ratification theory, alleging that the Police Chief "ratif[ied] the flaws" in the internal affairs and disciplinary review processes, and that "the City ratified the actions of the Defendant Officers by failing to initiate disciplinary action" (*see* Dkt. Nos. 50 at 7; 54-1 at 17). This claim also fails. Ratification applies only in "extreme factual situations," such as when a policymaker affirmatively approves plainly unconstitutional conduct. *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986), *overruled in part on other grounds by Graham*, 490 U.S. 386; *see also Snyder v. Trepagnier*, 142 F.3d 791, 794, 798 (5th Cir. 1998) (no ratification liability where officer shot fleeing plaintiff in the back after high-speed chase). Plaintiffs do not allege that the Police Chief personally approved the officers' actions in this case, and "mere acquiescence" is not enough. *Benfer*, 120 F.4th at 1287.

In short, Plaintiffs' municipal liability claim rests on generalized grievances about the City's internal affairs process, not a well-pled pattern of similar

constitutional violations or a policymaker's deliberate endorsement of the conduct at issue. These allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Therefore, the municipal liability claim will be dismissed.

### E. Failure to Intervene

Plaintiffs also bring a failure-to-intervene claim against Officers Garay, Lugo, and Cantu, alleging they had a duty to stop Officer Martinez from using excessive force against Christian and Erik (Dkt. No. 50 at 15–16). *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."). This claim fails for two reasons.

First, as discussed above, Plaintiffs have not plausibly alleged that Officer Martinez used excessive force. Without an underlying constitutional violation, there is no basis for bystander liability. *See Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir. 2010) ("Since we conclude no officer used excessive force in apprehending [plaintiff], we simultaneously conclude that no officer unconstitutionally failed to intervene.").

Second, even if Plaintiffs had plausibly alleged excessive force, the individual defendants would still be entitled to qualified immunity because the law did not clearly establish a duty to intervene under the facts alleged. Plaintiffs cite *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), and *Hale*, 45 F.3d 914, as purportedly governing precedent (Dkt. No. 54-1 at 12–13). But *Whitley* held that the plaintiff "failed to state a claim of bystander liability," which directly undercuts its use as clearly establishing the right at issue. 726 F.3d at 647. And while *Hale* involved a bystander liability

29

claim, it arose from significantly more egregious conduct: an officer watched, laughed, and encouraged a colleague as he "slammed [plaintiff] against the car; rammed his fist into [plaintiff's] testicles; and repeatedly tried to slam [plaintiff's] head into [a] car." 45 F.3d at 919. The plaintiff was handcuffed during the assault and alleged that "his wrists bled, blistered, and were swollen for two weeks, and that his right thumb and wrist were permanently damaged." *Id.* at 918. No such conduct is alleged here. The officers did not cheer on Officer Martinez or participate in gratuitous violence. Accordingly, *Hale* does not render it "beyond debate" that Officers Garay, Lugo, and Cantu had a constitutional duty to intervene on the facts of this case. *Ashcroft*, 563 U.S. at 741. For these reasons, the failure-to-intervene claim must also be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint (Dkt. No. 52) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** as to Erik Limon's (1) Fourth Amendment false arrest claim and (2) First Amendment retaliation claim, which shall proceed against Officers James Cantu and Destiny Garay. The motion is otherwise **GRANTED**. All other claims are **DISMISSED**. Defendants City of Laredo and Officers Christopher Joseph Martinez and Jesus Gabriel Lugo, Jr., are **DISMISSED**.

It is so **ORDERED**.

**SIGNED**, August 4, 2025.

_____
Marina Garcia Marmolejo
United States District Judge